(March 8, 1915.)

# E. W. PEASE, Appellant, v. CITY OF PAYETTE, a Municipal Corporation, Respondent.

[146 Pac. 000.]

MUNICIPAL CORPORATION—PUBLIC IMPROVEMENTS CONTRACT—SPECIFICA-
TIONS—VALIDITY OF CONTRACT—IMPROVEMENT BONDS.

1.   The provisions in the specifications for street improvements to
the effect that the contractor shall be responsible for all defects,
damage to fences, sidewalks, water-pipes, sewers, etc., and other
specifications and requirements contained in subdivisions 8, 17, 27
and 32, do not make the contract invalid or void, as all of said
specifications require only what was necessary to be done in order
to construct and complete such improvements, and do not tend to
increase the cost of such improvements beyond what said contractor
should be required to do or pay under the laws of this state.

2.   The acceptance by the city of a private bond instead of a
surety company bond, as provided by subdivision 8 of the specifica-
tions, is not sufficient to invalidate the contract and could only be
taken advantage of by the city itself.

APPEAL from the District Court of the Seventh Judicial
District for Canyon County.   Hon. Ed. L. Bryan, Judge.

Action to test the validity of a contract for the construction
of sidewalks and curbs in an Improvement District of the City
of Payette.   Judgment for the defendant.   *Affirmed.*

Alfred F. Stone, for Appellant.

The requirements of subdivisions 8, 17, 27 and 32 of the
specifications tend to increase the cost of construction, thereby
adding to the burden of the taxpayer, and for that reason
invalidate the contract in this case and the bonds to be issued
in payment for work done under such contract.   (*Woollacott
v. Meekin,* 151 Cal. 701, 91 Pac. 612; *Blochman v. Spreckels,*
135 Cal. 662, 67 Pac. 1061, 57 L. R. A. 213.)

A contract was held void where similar provisions were em-
braced in the bond.   (*Inge v. Board of Public Works,* 135 Ala.
187, 93 Am. St. 20, 33 So. 678.)

The provisions in a contract whereby the contractor is required to give bond "for keeping the streets so improved in thorough repair for the term of five years from the completion of the contract" not being authorized by statute invalidates the contract for the work and vitiates the assessment levied thereunder. (*Brown v. Jenks,* 98 Cal. 10, 32 Pac. 701; *Alameda Macadamizing Co. v. Pringle,* 130 Cal. 226, 80 Am. St. 124, 62 Pac. 394, 52 L. R. A. 264; *Portland v. Bituminous Paving Co.,* 33 Or. 307, 72 Am. St. 713, 52 Pac. 28, 44 L. R. A. 527.) This same principle would apply whether the guaranty were to cover a period of one week, a month or a year.

It is fair to presume that the acceptance by the city council of the private bond in this case was in fact a letting of the contract upon more favorable terms than were offered other bidders. This being the case, the contract is void. (*Wickwire v. City of Elkhart,* 144 Ind. 305, 43 N. E. 216.)

A. H. Bowen and Scatterday & Van Duyn, for Respondent.

The first division of sec. 8 of the specifications is evidently intended, made and created for the purpose of insuring that the contractor shall deliver to the city a good and complete sidewalk and curb and in accordance with the plans and specifications, and does not refer to what may happen to the sidewalk or curb after it is accepted by the city, but before. (*Schindler v. Young,* 13 Cal. App. 18, 108 Pac. 733.)

The second subdivision of sec. 8 is not objectionable, and the California courts, having *Blochman v. Spreckels,* 135 Cal. 662, 67 Pac. 1061, 57 L. R. A. 213, as their chief authority, have expressly so held. (*Lantz v. Fishburn,* 17 Cal. App. 583, 120 Pac. 1070.)

Municipal officers may modify a contract, provided such modification does not substantially change the character of the work. (28 Cyc. 1047 (b).) Moreover, the city has the power to waive strict compliance with the terms of a contract. (28 Cyc. 1054 (k).)

The guaranty is to make good, defects, and not to keep up streets which were not defective. (*Portland v. Bituminous*

*Paving & Imp. Co.,* 33 Or. 307, 72 Am. St. 713, 52 Pac. 28, 44 L. R. A. 527.)

Contrary to the California decisions, the majority of cases hold that a contract to keep the pavement or street in repair, whether or not it is defective, is good, because it is simply a guaranty of good workmanship. (*Louisville v. Henderson,* 5 Bush (Ky.), 521; *Covington v. Dressman,* 6 Bush (Ky.), 210; *Barber Asphalt Paving Co. v. Ullman,* 137 Mo. 543, 38 S. W. 458; *Gosnell v. Louisville,* 14 Ky. Law, 719; *Cole v. People,* 161 Ill. 16, 43 N. E. 607; *Latham v. Wilmette,* 168 Ill. 153, 48 N. E. 311; *Wilson v. Trenton,* 60 N. J. L. 394, 38 Atl. 635; *Allen v. Davenport,* 107 Iowa, 90, 77 N. W. 532; *Osburn v. Lyon,* 104 Iowa, 160, 73 N. W. 650; *Schnectady v. Union College,* 66 Hun, 179, 21 N. Y. Supp. 147; *Barber Asphalt Pav. Co. v. City of Louisville,* 123 Ky. 687, 97 S. W. 31, 9 L. R. A., N. S., 154; *Allen v. Labsap,* 188 Mo. 692, 87 S. W. 926, 3 Ann. Cas. 306.)

The contractor should not furnish defective work, and if there is any defective work that occurs through his fault, it is but reasonable that the city should have the right to demand that this defective work should be remedied by the contractor. (*Dillingham v. Spartanburg,* 75 S. C. 549, 117 Am. St. 923, 56 S. E. 381, 9 Ann. Cas. 828, 8 L. R. A., N. S., 412.)

Norris & Norris, *Amici Curiae.*

The provisions of sec. 8 of the specifications render the said contract illegal and void. (*Blochman v. Spreckels,* 135 Cal. 662, 67 Pac. 1061, 57 L. R. A. 213; *Van Loenen v. Gillespie,* 152 Cal. 222, 96 Pac. 87; *Woollacott v. Meekin,* 151 Cal. 701, 91 Pac. 612; *Hatch v. Nevills,* 7 Cal. Unrep. 341, 95 Pac. 43; *Glassell v. O'Dea,* 7 Cal. App. 472, 95 Pac. 44; *Mulberry v. O'Dea,* 4 Cal. App. 385, 88 Pac. 367; *Stansbury v. Poindexter,* 154 Cal. 709, 129 Am. St. 190, 99 Pac. 182; *True v. Fox,* 155 Cal. 534, 102 Pac. 263; *Inge v. Board of Public Works,* 135 Ala. 187, 93 Am. St. 20, 33 So. 678.)

Well considered cases hold that where a city is authorized to contract for paving its streets, it has no authority to incorporate in the contract an agreement for future maintenance. (*City Council of Montgomery v. Barnett,* 149 Ala.

119, 43 So. 92; *Excelsior Paving Co. v. Pierce* (Cal.), 33 Pac. 727; *McAllister v. Tacoma,* 9 Wash. 272, 37 Pac. 447, 658; *Kansas City v. Hanson,* 8 Kan. App. 290, 55 Pac. 513.)

The objection to such provisions is not removed by the testimony of the contractor that such requirements did not enhance the amount of his bid, as others might have bid a less sum if the contract had not contained such provisions. (*Brown v. Jenks,* 98 Cal. 10, 32 Pac. 701; *Stansbury v. Poindexter,* 154 Cal. 709, 129 Am. St. 190, 99 Pac. 182; *Excelsior Paving Co. v. Pierce* (Cal.), 33 Pac. 727; *Excelsior Paving Co. v. Leach* (Cal.), 34 Pac. 116.)

SULLIVAN, C. J.—This action was brought against the City of Payette upon an agreed statement of facts, to test the validity of a certain contract entered into between the city and Lathrop & McComsey, copartners, for the grading and constructing of curbs and sidewalks in Local Sidewalk, Curbing & Improvement District No. 1, of said city, and to test the validity of the bonds to be issued by the City of Payette for the purpose of paying for the work done under such contract.

The City of Payette has created within its boundaries a local improvement district known as Local Sidewalk & Curbing Improvement District No. 1 of said city, and has made an assessment against the property therein, apportioning thereto the expense of the construction work contemplated. Said city on or about January 5, 1914, by resolution of its council, required notice to be given to contractors for bids upon the contemplated construction of the work in such district, and in pursuance thereof such notices were given.

The bids received thereunder were not opened on the day set therefor by reason of the fact that W. A. Coughanour had in the meantime obtained a temporary injunction against said City of Payette, restraining the opening of said bids. Upon the dissolution of said injunction a new notice was given, stating that bids would be received up to noon of April 10, 1914, in response to which four bids were submitted. The bids were not opened upon the day set therefor by reason of the fact that said Coughanour took an appeal from the order dissolving the injunction, which was by the supreme court of this state

affirmed on or about July 10, 1914 (*Coughanour v. City of Payette,* 26 Ida. 280, 142 Pac. 1076), and immediately thereafter the last bids received were opened and the contract for doing the work let to said Lathrop & McComsey. The bids for the construction of the work were made upon certain plans and specifications attached to the agreed statement of the case, which specifications contained among other subdivisions Nos. 8, 17, 26, 27 and 32.

The provisions of these subdivisions and the failure to comply with the provisions of subd. 26 plaintiff claims invalidated the contract and the bonds to be issued in payment of the work to be done thereunder. The provisions of said subd. 26 have not been complied with, in that the said Lathrop & McComsey gave a private bond and not a surety company bond as required by said subdivision, and gave such private bond for sixty per cent of the estimated cost of the work under the contract as let. Said private bond was approved and accepted by the council of the City of Payette. Upon the approval of said contract, said Lathrop & McComsey immediately proceeded to commence work under said contract and have performed about $7,000 worth of labor and will, unless restrained, complete such contract, and the City of Payette will, unless restrained, issue bonds of the aforementioned improvement district in payment of said contract, and will collect assessments from plaintiff and others similarly situated.

This matter was heard upon the agreed statement of facts by the seventh judicial district court in and for Canyon county, and judgment was entered in favor of the city, from which judgment this appeal is taken.

The questions presented on this appeal concern the proper construction of said subdivisions above mentioned of the specifications under which the contract was let, and whether the requirements thereof tend to increase the cost of the work and whether they would prevent contractors from bidding for said work.

Respondents in their brief divided their argument into two subdivisions, under the following heads:

1. Are subdivisions 8, 17, 26, 27 and 32 of the purported plans and specifications such as to render the contract invalid

if it be admitted that said subdivisions are a part of said contract?

2. Subdivisions 8 and 27 are no part of the plans and specifications of the contract.

Said subdivisions are as follows:

Subd. 8. Defects or Damages. "All settlements, defects or damages in any portion of the works, whether caused by the contractor, his agents or the public at large, or resulting from strikes, fires or any acts of nature shall be repaired and made at the contractor's expense. All damages to fences, trees, sidewalks, waterpipes, sewers or other public or private property along or near the line of the work, or in the vicinity thereof, must, wherever the engineer shall direct, be made good to the satisfaction of the owners of the same, at the entire expense of the contractor. No private property outside of the line of the right of way shall be entered by the contractor without his first obtaining the consent of the owner."

Subd. 17. Inspectors. "The city or the engineer may appoint inspectors and any such inspector shall always have the right to stop the work, if in his opinion, the contractor is not complying with these specifications, plans, instructions and orders; and if at any time the inspector shall stop the work, the contractor shall not proceed again with said work until the engineer shall have examined and passed upon the question in dispute and the engineer's decision shall be final. Any work done after the inspector has ordered it stopped, as well as all work found at variance with these specifications, shall be at once removed by the contractor."

Subd. 26. Bond for Completion of Work. "The successful bidder shall furnish a Surety Co. Bond satisfactory to the City Council within thirty (30) days after the acceptance of the proposal by the City, for the faithful performance and successful completion of the work, and said bond to amount to 40 per cent of the amount of the contract."

Subd. 27. Guarantee Bond. "On or before the completion of the work and before final payment is made, the contractor shall furnish a good and sufficient Surety Co. bond for $10,000.00, same to run for one year from final completion of

works, guaranteeing that the works shall be free from all defects, either in construction or material, or both, and guaranteeing that the repairing of any such defects appearing in the work within one year from the completion of contract shall be paid for by the contractor, said repairs to be made under the direction of the engineer.''

Subd. 32. Engineering Expenses, etc. ''It is further understood and agreed that the contractor, in addition to furnishing material, labor and doing the work as hereinbefore mentioned at the unit prices herein named, shall pay to the City of Payette for the purpose of applying on the overhead expenses such as engineering, inspection, etc., the sum of One Thousand and no one-hundredths (1,000.00) Dollars, as follows, to wit: At the time of payment of each monthly estimate, the same percentage of $1,000.00 as shown by the estimate for that month of the percentage of the work completed in said month.''

Counsel for appellant contends that the requirements of said subdivisions 8, 17, 27 and 32 tend to increase the cost of the work and prevent contractors from bidding thereon; while counsel for respondent contends that said subdivisions of the specifications are no part of the contract, and even if they were considered as a part of the contract, they would not make the contract invalid or void.

There is nothing in the provisions of subd. 8 of said specifications that would tend to increase the cost of said work or prevent contractors from bidding thereon, and there is nothing contained in said provisions but what the city had the right to require the improvement district to become responsible or liable for and to pay the same.

The same may be said of subdivisions 17, 27 and 32 of said specifications. All of the provisions of said specifications require only what was necessary to be done in order to complete the improvements contemplated in the construction of said improvements. The giving of a guaranty bond of $10,000 to run for one year from the final completion of the works, guaranteeing that the work shall be free from all defects and guaranteeing that the repairing of all such defects that may

appear in the work from one year from completion shall be paid for by the contractor, is only a reasonable provision in such contract. Experience shows that such work ought to last, if properly done and the proper material is used, for one year. If it proves within that year to be defective either in construction or material, or both, then the contractor must repair the same or make it good. This condition in the contract or specifications certainly would not deter the honest contractor from bidding for such work, and it is proper and right that the improvement district should pay for work of that kind that should last for at least a year under ordinary conditions.

Subd. 32 of said specifications provides that the contractor, in addition to furnishing material, labor and doing the work as specified, shall also pay to the City of Payette for the purpose of applying on the overhead expenses, such as engineering, inspection, etc., the sum of $1,000. This cost or expense was absolutely necessary in order to have the work properly done and is an expense that the district should pay. From the wording of that specification, the $1,000 is clearly not all that the work required of the engineer would cost the city, for the $1,000 provided for is as stated therein, "for the purpose of applying on the overhead expenses," etc., clearly indicating that said sum did not pay all of such expenses but perhaps the greater portion thereof, since a certain sum to be applied on the payment of an indebtedness does not contemplate that the application of such sum would pay the cost or expense in full.

Subd. 26 of said specifications requires the successful bidder to furnish a surety company bond, satisfactory to the city council etc., to the amount of 40% of the contract price, conditioned on the faithful performance and successful completion of said work.

Instead of requiring the successful bidder to furnish a surety company bond, the city council permitted them to furnish a private bond and approved such bond, and it is contended that that action on the part of the council was illegal and amounted to a discrimination against other bidders.

There is nothing in this contention, since the council had the right to accept a private bond instead of a surety company bond, if it so desired, of the successful bidder. No doubt all who bid for this work made their bids with the expectation of giving a surety bond, and the reason for the provision no doubt was that there are many bidders outside of the state who would not desire to give a private bond and maybe could not give one that the city council would approve. Nothing appears in the record but that the private bond was just as good and safe as a surety company bond. That breach of the provisions referred to is not sufficient to invalidate the contract and could only be taken advantage of by the city itself. If the work was done in a defective manner, or not in accordance with the specifications, the city might refuse to accept the same and would not be liable on *quantum meruit.* (See 28 Cyc. 1054 (i).) The city has authority to waive a strict compliance with the terms of the contract if it desires to do so. (28 Cyc. 1054 (k).)

Without analyzing or citing in this opinion the authorities referred to by counsel for respondent and appellant as well as those cited by counsel appearing *amici curiae,* we are satisfied from our examination of them that none of such authorities which this court is willing to follow would require a reversal of the judgment of the trial court, since said subdivisions of said specifications do not tend to increase the cost of such improvements beyond what the improvement district should be required to pay under the laws of this state.

We therefore hold that said contract is a valid contract and the bonds proposed to be issued in payment for said work are valid bonds.

Finding no reversible error in the record, the judgment is affirmed, with costs in favor of the respondent.

Budge and Morgan, JJ., concur.